UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 5:26-cv-01542-HDV-MBK | | Date | April 7, 2026 |
|---|---|---|---|---|
| Title | *Edwin Abel Gonzalez Veliz v. Pamela Bondi et al.* | | | |

Present: The Honorable    Hernán D. Vera, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING TEMPORARY RESTRAINING ORDER REQUIRING RELEASE [3]**

Petitioner Edwin Abel Gonzalez Veliz filed a Petition for Writ of Habeas Corpus on March 30, 2026.  ("Petition") [Dkt. 1].  On March 31, Petitioner filed an *ex parte* application for a temporary restraining order to release Petitioner from detention on his order of supervision from 2013.  *Ex Parte* Application for a Temporary Restraining Order ("TRO Application") [Dkt. 3].  Petitioner seeks immediate release from immigration detention.  Petition at 25.

On April 1, based on its initial findings of a probability of success on the merits and numerous forms of irreparable harm, this Court immediately issued emergency relief maintaining the status quo and setting a schedule for an opposition, reply, and a hearing on the TRO Application.  [Dkt. 5].  On April 6, the government filed a "Response" which states, in full:

> On March 31, 2026, Petitioner filed an Ex Parte Application for Temporary Restraining Order seeking an order requiring Respondents to release him from immigration detention.  The Court, on April 1, 2026, ordered Respondents to file a response to the TRO.  ***Respondents are not presenting an opposition argument at this time.***

Respondents' Response to TRO Application ("Response") [Dkt. 7] (citations omitted) (emphasis added).

Given the government's non-opposition, and the Court's independent findings concerning the merits of Petitioner's requests,[1] the Court grants Petitioner's TRO Application and issues the following temporary restraining order.  Respondents are ordered to:

---

[1] The Court can grant the TRO Application solely on the basis of the government's failure to oppose it.  *See* C.D. Cal. L.R. 7-12.  But the Court is also satisfied that the standard is met here.  To be entitled to a temporary restraining order or preliminary injunction, the movant must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent preliminary injunctive relief, (3) the balance of equities tips in his favor, and (4) preliminary injunctive relief is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. john D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Petitioner—a native and citizen of Guatemala—has been ordered removed but was released on bond and granted withholding of removal in late 2013.  Petition ¶ 8, Ex. 8; TRO Application at 9, 12.  He has fully complied with his order of supervision since then—regularly reporting to ICE and with no new criminal history.  Petition ¶¶ 9–11, Declaration of Edwin Abel Gonzalez-Veliz ("Gonzalez-Veliz Decl.") ¶¶ 26–30.  On March 24, 2026, he was detained at one of his regular check-ins.  He says he was told they were going to "take him under arrest because there is a new administration now, they were forced to detain him, and if they could not send him to his country they would find a third country for him."  Gonzalez-Veliz Decl. ¶ 30.  He avers that Respondents never alleged that he had failed to comply with or violated the terms of his supervision, that he was a flight risk or a danger, or that they had new information against him.  *Id.* ¶¶ 31–33.  He declares that he was never given an opportunity for an interview.  But regulations establish certain required process for revocation of release: (1) "notifi[cation] of the reasons for revocation of his or her release" and (2) "an initial informal interview promptly after his or her return to [] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).  If a non-citizen continues to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "ordinarily [] expected to occur within approximately three months after release is revoked."  8 C.F.R. §§ 241.4(l)(3); 241.13(i)(2).  "In simpler terms, in order to revoke release, the government must notify the noncitizen of the ***reason*** for the revocation and give them both an ***informal and formal interview***."  *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).  The government has not even attempted to rebut Petitioner's showing that they did not do this.  *See* Response.  Petitioner has thus demonstrated a likelihood of success on the merits.

The other three factors also weigh in favor of preliminary injunctive relief.  "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages."  *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).  "[I]mmigration detention" imposes additional "irreparable harms," including the "economic burdens imposed on detainees and their families as a result of detention."  *Id*. at 995; *see* Gonzalez-Veliz Decl. ¶¶ 35–37.  And "it is always in the public interest to prevent the violation of a party's constitutional rights."

---

    a.  Immediately release Petitioner from custody; and

    b.  Restore Petitioner to the status quo prior to his re-detention by reinstating his prior order of supervision from 2013, without any additional release restrictions.[2]

The hearing on the TRO Application set for **April 10, 2026 at 10:00 a.m.** is **vacated** as moot. Respondents are ordered to disseminate this Order to the immigration agents in charge of processing Petitioner and to place a copy of this Order in the Petitioner's A-File. The parties are ordered to file, within ten days of this Order, a joint report regarding the status of compliance with these mandates.

**IT IS SO ORDERED.**

---

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (citation omitted).

[2] Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).